J. MARK HOLLAND (140453)
**J. MARK HOLLAND & ASSOCIATES**
a Professional Law Corporation
19800 MacArthur Blvd., Suite 300
Irvine, CA  92612
Telephone:  (949) 718-6750
Facsimile:  (949) 718-6756
Email: office@jmhlaw.com

Attorneys for Plaintiff
ALLERGIA, INC., et al.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ALLERGIA, INC., a California
corporation,

        Plaintiff,

vs.

DENIS BOUBOULIS, an individual;
and DOES 1 THROUGH 5, inclusive,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. **'14CV1566 W      RBB**

**COMPLAINT FOR
DECLARATORY JUDGMENT
OF PATENT APPLICATION
OWNERSHIP AND/OR OTHER
PATENT RIGHTS; PATENT
INVALIDITY; AND BREACH
OF FIDUCIARY DUTY**

**JURY TRIAL DEMANDED**

## THE PARTIES

1.   Plaintiff Allergia, Inc. ("Allergia") is a corporation incorporated under the laws of the State of California, with a principal place of business in California at 1479 Glencrest Dr. #A, San Marcos, CA 92078.

2.   Upon information and belief, Defendant Denis Bouboulis ("Bouboulis") is an individual residing in the State of Connecticut, with an address of 125 Strawberry Hill Avenue, Stamford, CT 06902.

3.   The true names and capacities of Doe Defendants 1 through 5 are not known to Allergia at this time, and Allergia therefore sues them under fictitious names.  When the actual identities of Does 1 through 5 are determined, Allergia intends to seek leave of Court to amend this Complaint to name such persons as Doe Defendants.  Allergia is informed and believes, and thereon alleges, that Does

1 through 5 participated in the wrongful acts described herein, and are responsible in some way for the wrongful acts and resulting damages alleged herein. Accordingly, as indicated above and depending on the context in which it is used herein, the terms "Defendant" and/or "Defendants" are intended to include not only "Bouboulis," but also any other Defendants or any individuals or other entities acting on behalf of or in coordination with Bouboulis regarding the matters discussed herein.

## JURISDICTION AND VENUE

4.   This complaint is for a declaratory judgment of patent application ownership and/or other patent rights; alternatively for patent invalidity regarding certain patent application(s) filed by Defendant (as further explained below); and for breach of fiduciary duty.  The ownership and invalidity issues arise under the patent laws of the United States, Title 35, United States Code.

5.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, §1332, §2201, and §1338(a).

6.   The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

7.   This Court has personal jurisdiction over the Defendants consistent with the principles of due process, by virtue of one or more of the following:

- the Defendant transacting and doing business in this District,
- because a substantial part of the relevant events occurred in this District, and/or
- because a substantial part of the property that it is the subject of this action is situated here.

8.   Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b).

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

9. Beginning several years ago, Defendant worked with Plaintiff's predecessor-in-interest (CLRS Technology, Inc., or "CLRS") and received in exchange for his contributions approximately 116,111 shares of CLRS common stock. That stock was consideration for (among other things) Defendant's contribution to the invention and/or development of medical devices (apparatus) and related methods for using phototherapeutics to alleviate the symptoms of allergic rhinitis. Those methods and apparatus also related to some degree to technology that had been previously developed by CLRS for other phototherapeutic medical devices.

10. On or about August 5, 2010, CLRS filed a provisional patent application with the United States Patent and Trademark Office ("USPTO"), as Application Ser. No. 61/371,172 ("the '172 application") directed to the foregoing invention (for alleviating the symptoms of allergic rhinitis). Defendant was one of three named inventors in that '172 patent application.

11. Approximately two months after filing the '172 patent application, in connection with a corporate transaction involving a third party (Solta), CLRS spun out that patent application to a new entity, Plaintiff Allergia, Inc.

12. Specifically, on or about October 5, 2010, Allergia was incorporated under the laws of California. All of the then-existing shareholders of CLRS became shareholders of Plaintiff Allergia, including Defendant. Similar to the other CLRS shareholders, Defendant received shares of stock in Plaintiff based on Defendant's then-existing shares in CLRS. Following this reorganization, Defendant held the same number of shares in Plaintiff Allergia as Defendant had in CLRS prior to the corporate transaction with Salto.

13. Approximately one week later (as shown on documents dated on or about October 12 and 13, 2010), CLRS assigned all rights in the '172 provisional

COMPLAINT
Civ. Action No.                                                              3

1  patent to Plaintiff Allergia.  The beginning, end, and other portions of certain of
2  those documents are copied below, including the signature (at the bottom of the
3  document) by Defendant on behalf of Plaintiff Allergia.  The excerpts below are
4  from an "Assignment and Assumption Agreement" dated October 12, 2010, and a
5  "License Agreement" dated October 13, 2010:

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is entered into as of October 12, 2010, by and between CLRS Technology, Inc., a California corporation ("Assignor"), and Allergia, Inc., a California corporation ("Assignee").

**WITNESSETH:**

WHEREAS, Assignor owns all of the assets set forth on Exhibit A attached hereto (the "Distributed Assets"); and

WHEREAS, each of Assignor and Assignee desire to execute and deliver this Agreement for the purpose of effecting (i) the sale, assignment, transfer, conveyance, distribution and delivery of all of Assignor's rights, title and interest in, to or under the Distributed Assets to Assignee as a distribution to Assignee, and (ii) the assumption by Assignee of all of the obligations and liabilities of Assignor relating to the Distributed Assets and to the intellectual property licensed or assigned to Assignee by Assignor pursuant to the License Agreement dated the date hereof between Licensee and Licensor licensed from Assignor (the "Assumed Liabilities").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

**AGREEMENT:**

1.     Assignment of Distributed Assets.  For good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, Assignor does hereby sell, assign, transfer, convey, distribute and deliver all of its rights, title and interest in, to or under the

Oct 12 2010 6:36PM    HP LASERJET FAX                                              p.1

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

CLRS Technology, Inc. *COEPORATION*

By: _____

Name: *Richard Obersitey*

Title: *CEO*

Allergia, Inc.

By: _____

Name: _____

Title: _____

---

LICENSE AGREEMENT (this "**Agreement**") entered into as of October 13, 2010 (the "**Effective Date**"), among:

CLRS Technology, Inc., a California corporation, with its principal offices located at 3183 A-1 Airway Avenue, Costa Mesa, CA 92626 ("**Corporation**")

And

ALLERGIA, Inc., a California corporation, with its principal offices located at 3183 A-1 Airway Avenue, Costa Mesa, CA 92626("**Licensee**")

### RECITALS

A.   The Corporation has developed prototypes of an allergy treatment device that produces light in the red wavelengths to treat nasal cavity tissue to treat allergic rhinitis ("ATD"), and which is predicated in part on the technological underpinning of the CLARO dermatological device ("CLARO") it has developed and has begun to market and sell to certain retailers.

B.   The Corporation intends to merge with Solta Medical, Inc. ("**Solta**") to, among other things, further develop and expand the CLARO dermatological device business, and accordingly Solta has agreed to allow the Corporation to license and assign certain rights associated with the ATD to Licensee, a corporation controlled by the current shareholders of the Corporation, and allow such corporation to independently develop and exploit the ATD.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements herein contained, Corporation and Licensee hereby agree as follows:

**COMPLAINT**
Civ. Action No.                                                                                    5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1.7 "ATD Patent Rights" shall mean all rights owned by Corporation as of the Effective Date in, to or under the patent application attached as Exhibit A hereto, and all divisions and continuations of any such patent application and all foreign equivalents thereto, and all patents which may issue from any such patent application, and all reissues and reexaminations and extensions of any such patents.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed as of the Effective Date by their duly authorized representatives.

CLRS Technology, Inc., *corporation*

By:

Name/Title: *Richard Barrata, CEO*

Date: *OCT 13, 2010*

Allergis, Inc.

By:

Name/Title: Denis Bouboulis, MD, President

Date:       October 13, 2010

**EXHIBIT A**

**ATD Patent Rights**

**[see attached provisional patent application]**

**COMPLAINT**
Civ. Action No.                                                                                         6

CLRST-P3709

**METHODS AND APPARATUS FOR TREATING ALLERGIC RHINITIS**

**FIELD OF THE INVENTION**

[0001]      The general field of the invention is medicine and the use of flash lamp

radiation, and more specifically, the use of phototherapy to treat the symptoms of seasonal and

5      perennial allergic rhinitis.

**BACKGROUND OF THE INVENTION**

[0002]      Allergic rhinitis (also commonly known as hay fever) is a condition that

14. A few days later, on or about October 15, 2010, the initial incorporator of Plaintiff Allergia formally named Defendant as an initial director of Plaintiff. That designation is shown in a corporate record copied here:

**ACTION BY WRITTEN CONSENT**

**OF THE INCORPORATOR**

**OF**

**ALERGIA INCORPORATED**

The undersigned incorporator of Allergia, Incorporated, a California corporation, took the following actions on the above date, pursuant to the California Business Corporation Act:

Until otherwise determined by the Board, the number of members comprising the Board of Directors shall be five (5). Each person named below has been elected by me as a director of said corporation to hold office until the first annual meeting of stockholders or until his or her successor is elected and qualified:

Denis Bouboulis, M.D.

Douglas Chan

Richard Clement, M.D.

Jan Enemaerke

Lawrence Johnson

Signed and acted upon on this 15th day of October, 2010

Richard Oberreiter

15. Thus, as shown above, Defendant assisted and was directly involved in the aforementioned CLRS/Allergia corporate transactions, and signed documents

confirming Allergia's ownership of the '172 patent application and related rights, and Defendant's position as a director of Allergia.  Specifically, Defendant signed at least two documents on behalf of that new company Allergia, documents that acknowledged that CLRS owned the '172 patent application and that Allergia was receiving that ownership from CLRS.

16. A few months later, during an organizational telephone call of the proposed Allergia board of directors, and without any advance notice to the other shareholders and directors, Defendant proposed that he would assume the duties of CEO of Plaintiff Allergia if he were granted a controlling interest in the capital stock of Allergia (rather than the smaller percentage that Defendant actually did own at that time).   The other Allergia shareholders and directors rejected Defendant's proposal (such directors held in the aggregate the majority of the shares of Plaintiff Allergia).

17. Sometime in the next several months, and without the knowledge and/or authorization of Allergia or its other shareholders, Defendant secretly prepared a related and apparently competitive patent application.  On information and belief, Defendant's application is so closely related to Allergia's pending application that it may foreseeably interfere with or negatively affect Allergia's business efforts related to Allergia's patent-pending technology.  On information and belief, the facts relating to the various pending applications and related acts of invention may support Allergia having co-ownership of the Defendant's potential patent rights (for example, by virtue of one or both of the other Allergia inventors being co-inventors in Defendant's separate patent application), and Defendant's patent application may be invalid for failing to name any such co-inventor.   On information and belief, those same facts may support Allergia's equitable claim of ownership and/or right to use the technology set forth in Defendant's aforementioned patent applications.

COMPLAINT
Civ. Action No.                                                                                        8

18. Without knowledge of Defendant's other secret patent application, Plaintiff Allergia continued to prosecute its '172 patent application, including filing a full utility application (Ser. No. 13/198,672; "the '672 application"). Plaintiff filed that '672 application on or about August 4, 2011.  Plaintiff kept Defendant apprised of the status of Plaintiff's patent application, and even solicited Defendant's signature on some related formal filing documents.  To a large or even complete extent, Defendant refused to participate or assist in that prosecution.  By way of example, the other two inventors named in the '172 patent application executed formal assignment agreements confirming their understanding that ownership of the intellectual property associated with the invention resided with Allergia, but Defendant refused to sign that same document.

19. On or about August 5, 2011 (just one day after Plaintiff's aforementioned August 4, 2011 full utility patent application filing), and again without the knowledge and/or authorization of Plaintiff, Defendant secretly filed a separate provisional patent application with the U.S. Patent and Trademark Office (Application Ser. No. US 13/204,282; "the '282 application").  Defendant's U.S. provisional application has since expired by its own terms (provisional applications expire one year after they are filed), but Defendant filed an "international" PCT patent application (also without the knowledge and/or authorization of Plaintiff) related to and based on Defendant's '282 application, and Defendant's PCT application remains pending.  Due to confidentiality and non-publication of various patent application filings and related information, Plaintiff Allergia is not able to confirm at this time whether Defendant has filed and/or has pending other related patent applications, and therefore Plaintiff alleges on information and belief that Plaintiff's rights and/or Defendant's duties with respect to any such additional patent applications are the same as set forth herein

with respect to Defendant's '282 application and Defendant's related PCT application (and Plaintiff intends that the allegations herein are directed to all such applications).

20. Both Defendant's '282 application and Defendant's related PCT filing were/are virtually the same as Plaintiff's '172 and '672 patent applications.   By way of example, Defendant's provisional and related PCT patent applications include description and claims that are similar or even virtually identical to the description and claims as in the Plaintiff's pending patent applications.  Based on the parties' relationship, Defendant had a duty to disclose to Plaintiff (a) any arguably "new" information in Defendant's '282 application and Defendant's related PCT filing, and/or (b) at least that Defendant had filed those patent applications.  Defendant never did either of those things.

21. In other words, despite Defendant's relationships (a) to and with Plaintiff and (b) to the subject matter of Plaintiff's pending '172 and '672 patent applications, Defendant never disclosed to Plaintiff Allergia the filing of Defendant's provisional patent and/or Defendant's related PCT application.  A reasonable person would have understood that Defendant's aforementioned secret patent applications would have been of interest to Plaintiff and would likely have affected Plaintiff's actions.  Defendant intentionally withheld that information from Plaintiff, and by virtue of that failure to disclose information to Plaintiff, Defendant misled Plaintiff into continuing to provide to Defendant confidential information relating to Plaintiff's pending '172 and '672 patent applications, such as Office Action communications received by Plaintiff from the United States Patent and Trademark Office.

22. Again without the knowledge that Defendant had filed those secret and separate patent applications, and despite having no legal or factual basis requiring Allergia to give Defendant anything further beyond the shares that Defendant

COMPLAINT
Civ. Action No.                                                                    10

already owned, Allergia continued to make reasonable efforts to get Defendant to sign certain formal "assignment" documents related to the '172 patent application/technology/invention.  Plaintiff's good faith efforts have continued in that regard, including very recently a conference call on June 13, 2014, in which Allergia offered to Defendant 5% of the equity in Allergia as of the date of Allergia's organization (the offered shares were to be common shares and would not carry anti-dilution rights). Allergia made the offer in good faith with the intention of obtaining Defendant's signature and addressing any other existing differences between the parties. Defendant refused the settlement offer.

**COUNT I**

**DECLARATORY JUDGMENT OF PATENT APPLICATION OWNERSHIP AND/OR OTHER PATENT AND INTELLECTUAL PROPERTY RIGHTS**

23. Allergia realleges and incorporates by reference the allegations set forth in paragraphs 1-22.

24. Based on the foregoing, Plaintiff Allergia is the owner of 100% of Plaintiff's '172 and '672 patent applications, and the technology and inventions underlying and disclosed therein.

25. Based on the foregoing, Plaintiff Allergia is at least the co-owner of Defendant's provisional and related PCT patent applications, and/or is authorized to practice any inventions disclosed and/or claimed in those applications (and/or any patents that may eventually issue based on same).

26. Based on the foregoing, Defendant's provisional and related PCT patent applications are invalid (at least to the extent that they may affect patent rights within the United States) because Defendant has failed to name the proper inventors in those patent applications.

27. On information and belief, Defendant's action cloud Allergia's title to

the relevant technology.  Further on information and belief, Defendant intends to continue his unlawful activity, and Allergia continues to and will continue to suffer irreparable harm—for which there is no adequate remedy at law—from such unlawful activity unless this Court declares and confirms Allergia's rights concerning the foregoing, and unless Defendant is enjoined by this Court from his indicated behaviors and actions.  Although Allergia believes that the existing record (including the documents excerpted above) are sufficient to establish at least certain of Allergia's above-discussed rights, absent a declaration from the Court confirming one of more of the foregoing points (in paragraphs 24-26 above), Defendant is likely to continue to take actions inconsistent with Allergia's ownership and related rights, and Allergia is likely to continue to be damaged by Defendant's actions.

**COUNT II**

**BREACH OF FIDUCIARY DUTY**

28. Allergia realleges and incorporates by reference the allegations set forth in paragraphs 1-27.

29. Based on the foregoing, Defendant has breached his fiduciary and/or other duties to Plaintiff, including by applying for separate and competitive patent protection that has or will foreseeably negatively affect Plaintiff's opportunities to commercialize Plaintiff's invention.  Defendant had at least an implied duty to not compete with Plaintiff Allergia with technology or systems closely related to Allergia's patent applications, and/or closely related to the subject matter of the '172 patent application.  Upon information and belief, the subject matter of Defendant's '282 application and Defendant's related PCT filing are so closely related to Plaintiff's '172 patent application that Defendant has a duty to assign or license those applications to Plaintiff and/or at least not to compete with Plaintiff by practicing (or licensing/authorizing and third party to practice) the subject

matter of Defendant's '282 application and Defendant's related PCT filing.

30. By virtue of the foregoing, and on information and belief, Defendant intends to continue his unlawful activity, and Allergia continues to and will continue to suffer irreparable harm—for which there is no adequate remedy at law—from such unlawful activity unless Defendant is enjoined by this Court. Absent a declaration from the Court confirming one or more of the foregoing points (in paragraph 29 above), Defendant is likely to continue to take actions inconsistent with Allergia's rights, and Allergia is likely to continue to be damaged by Defendant's actions.

31. By virtue of the foregoing, Allergia is entitled to recover from Defendant the damages suffered by Allergia as a result of Defendant's unlawful acts.

32. On information and belief, Defendant's above-discussed actions have been and are intentional and willful and deliberate, entitling Allergia to an award of enhanced damages and reasonable attorney fees and costs.

## PRAYER

WHEREFORE, Plaintiff Allergia prays for relief as follows:

A.    For a judgment declaring that Plaintiff Allergia is the sole owner of Plaintiff's '172 and '672 patent applications, and the technology and inventions underlying and disclosed therein;

B.    For a judgment declaring that Defendant is estopped from asserting any claim inconsistent with Plaintiff Allergia being the sole owner of Plaintiff's '172 and '672 patent applications, and the technology and inventions underlying and disclosed therein, by virtue of Defendant's actions described above;

COMPLAINT
Civ. Action No.

C.   For a judgment declaring that Plaintiff Allergia is at least the co-owner of Defendant's provisional and related PCT patent applications, and/or is authorized to practice any inventions disclosed and/or claimed in those applications (and/or any patents that may eventually issue based on same);

D.   For a judgment declaring that Defendant's provisional and related PCT patent applications are invalid (at least to the extent that they may affect patent rights within the United States) because Defendant has failed to name the proper inventors in those patent applications;

E.   For a judgment that Defendant has breached fiduciary and/or other duties that he owes or owed to Plaintiff Allergia;

F.   For a judgment awarding Allergia compensatory damages as a result of Defendant's wrongful actions, in an amount to be proven at trial;

G.   For a judgment declaring that Defendant's foregoing actions have been intentional, willful, deliberate, and/or in bad faith;

H.   For a judgment awarding Allergia enhanced damages Allergia's expenses, costs, and (upon motion as provided under Rule 54(d) of the Federal Rules of Civil Procedure) attorneys' fees;

I.   For a mandatory injunction requiring Defendant to confirm in writing Plaintiff's ownership of the foregoing Plaintiff's patent applications, and to assign in writing the foregoing unauthorized Defendant's patent applications and/or any other similar filings by Defendants, and to reasonably cooperate with Plaintiff in connection with any further prosecution or related actions concerning such applications;

J.   For a permanent injunction enjoining Defendant from further actions inconsistent with Allergia's ownership and rights in the foregoing patent applications, any resulting patents, and technology; and

COMPLAINT
Civ. Action No.                                                                                    14

K.     For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:     June 26, 2014                    s/J. Mark Holland
                                           J. Mark Holland
                                           **J. MARK HOLLAND & ASSOCIATES**
                                           Attorney for PLAINTIFF ALLERGIA

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demand is hereby made for trial by jury on all issues properly triable by jury.


Respectfully submitted,


Dated:   June 26, 2014                    s/J. Mark Holland
                                          J. Mark Holland
                                          **J. MARK HOLLAND & ASSOCIATES**
                                          Attorney for PLAINTIFF ALLERGIA

C:\Data\TRAVEL_DOCS\ALLGI\L3946_Bouboulis_lawsuit\Complaint\ALLGI-L3946_Complaint_FINAL.doc

**COMPLAINT**
Civ. Action No.                                                                  16