# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLERGIA, INC., a California corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>DENIS BOUBOULIS, an individual; and DOES 1 THROUGH 5, inclusive,<br><br>                    Defendants. | CASE NO. 14-CV-1566 JLS (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>(ECF No. 11) |

Presently before the Court is Defendant Denis Bouboulis' ("Defendant") Motion to Dismiss the Complaint ("MTD"). (ECF No. 11.) Also before the Court is Plaintiff Allergia, Inc's ("Plaintiff") Response in Opposition to (ECF No. 15) and Defendant's Reply in Support of (ECF No. 16) the MTD. The hearing on the MTD scheduled for January 8, 2015 was vacated, and the matter was taken under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties arguments and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's MTD.

## BACKGROUND

Beginning several years ago, Defendant worked for Plaintiff's predecessor-in-interest, CLRS Technology, Inc. ("CLRS") "and received in exchange for his contributions approximately 116,111 shares of CLRS common stock." (Compl. ¶ 9,

ECF No. 1.) "That stock was consideration for (among other things) Defendant's contribution to the invention and/or development of medical devices (apparatus) and related methods for using phototherapeutics to alleviate the symptoms of allergic rhinitis." (*Id*.)

"On or about August 5, 2010, CLRS filed a provisional patent application with the United States Patent and Trademark Office ("USPTO"), as Application Ser. No. 61/371,172 ("the '172 application") . . ." (*Id*. at ¶ 10.) The application listed Defendant as one of three named investors of the '172 patent application. (*Id*.) Approximately two months later, as a result of a corporate transaction, "CLRS spun out that patent application to a new entity, Plaintiff Allergia, Inc." (*Id*. at ¶ 11.) Subsequently, Plaintiff was incorporated and "[a]ll of the then-existing shareholders of CLRS became shareholders of Plaintiff Allergia, including Defendant." (*Id*. at ¶ 12.)

On or about October 12 and 13, 2010, CLRS assigned all of its rights in the '172 provision patent to Plaintiff. (*Id*. at ¶ 13.) A few days later, Defendant was named "as an initial director of Plaintiff." (*Id*. at ¶ 14.) In his capacity as a director, Defendant "assisted and was directly involved in the aforementioned CLRS/Allergia corporate transactions, and signed documents confirming Allergia's ownership of the '172 patent application and related rights . . ." (*Id*. at ¶ 15.) Defendant signed at least two documents on Plaintiff's behalf "that acknowledged that CLRS owned the '172 patent application and that Allergia was receiving that ownership from CLRS." (*Id*.)

A few months later, Defendant, on his own and without advance notice, "proposed that he would assume the duties of CEO of Plaintiff Allergia if he were granted a controlling interest in the capital stock." (*Id*. at ¶ 16.) Plaintiff's shareholders and directors rejected this plan. (*Id*.) Sometime in the following months, "Defendant secretly prepared a related and apparently competitive patent application."[1] (*Id*. at ¶ 17.) Plaintiff alleges that the application is so similar to the '172 application, "that it may foreseeably interfere with or negatively affect [Plaintiff's] business efforts related

---

[1] Defendant did not file an application at this time. (*See* MTD 20–22, ECF No. 11-1.)

to [Plaintiff's] patent-pending technology." (*Id*.) Plaintiff further alleges that "the facts relating to the various pending applications and related acts of invention may" support a finding that Plaintiff co-owns Defendant's potential patent rights or a finding that Defendant's patent application is invalid for failing to name co-inventors. (*Id*.) "[T]hose same facts may support [Plaintiff's] equitable claim of ownership and/or right to use the technology set forth in Defendant's aforementioned patent applications." (*Id*.)

Plaintiff continued to prosecute the '172 patent application and, on August 4, 2011, Plaintiff filed a full utility application (Ser. No. 13/198,672) ("the '672 application"). (*Id*. at ¶ 18.) Plaintiff kept Defendant informed of the status of the patent application and "solicited Defendant's signature on some related form filing documents." (*Id*.) Defendant, unlike this co-inventors, largely "refused to participate or assist" in the patent prosecution. (*Id*.) For example, Defendant refused to sign a formal assignment agreement confirming his "understanding that ownership of the intellectual property associated with the invention resided with [Plaintiff]." (*Id*.)

The following day, Defendant allegedly filed a secret provisional patent application with the USPTO (Ser. No. 13/204,282) ("the '282 application"). (*Id*. at ¶ 19.) Plaintiff states that this application has since expired;[2] however, Defendant allegedly also filed an international Patent Cooperation Treaty ("PCT") patent application, based on the '282 application, which remains pending. (*Id*.)

Plaintiff alleges that the '282 application and the PCT filing "are virtually the same as Plaintiff's '172 and '672 patent applications." (*Id*. at ¶ 20.) Plaintiff states taht "[b]ased on the parties' relationship, Defendant had a duty to disclose to Plaintiff (a) any arguably "new" information on Defendant's '282 application and Defendant's related PCT filing, and/or (b) at least that Defendant had filed those patent applications," neither of which he did. (*Id*.) Plaintiff alleges that Defendant's failure to inform Plaintiff of his patent application "misled Plaintiff into continuing to provide

---

[2] Defendant asserts that this application is still pending. (MTD 19, ECF No. 11-1.)

Defendant confidential information relating to Plaintiff's pending '172 and '672 patent applications." (*Id.* at ¶ 21.)

On March 24, 2014, "Plaintiff filed a divisional patent application based on the '172 and '672 applications, bearing Application Ser. No. 14/223,861 ("the '861 application")." (MTD 11,[3] ECF No. 11-1.) This application lists the same three inventors as the previous applications, Defendant, Jan Enemaerke, and Richard Oberreiter. (*Id.*)

Additionally, Plaintiff has "continued to make reasonable efforts to get Defendant to sign certain formal 'assignment' documents related to the '172 patent application/technology/invention," including offering Defendant additional equity, to no avail. (Compl. ¶ 22, ECF No. 1.)

On June 30, 2014, Plaintiff filed the complaint in this matter seeking a declaratory judgment of patent application ownership and/or other patent rights; patent invalidity; and breach of fiduciary duty. (*See id.*) On November 6, 2014, Defendant filed the instant motion to dismiss.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge a court's subject matter jurisdiction. Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotations omitted). Challenges to a plaintiff's standing are properly brought as Rule 12(b)(1) motions. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). This applies equally to patent cases, in which "'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert

---

[3] For ease of reference, all page numbers cited to are the CM/ECF numbers at the top of the page.

standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309–10 (Fed Cir. 2003)). If a court finds that "'the original plaintiff lacked Article III initial standing, the suit must be dismissed'" for lack of jurisdiction "'and the jurisdictional defect cannot be cured.'" *Id*. (quoting *Schreiber Foods, Inc v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)). A plaintiff bears the burden of establishing standing for federal court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 518 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a property party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.")

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. A challenge to subject matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *See id*.

**II. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend.

## ANALYSIS

Plaintiff asserts the following two claims: (1) declaratory judgment of patent application ownership and/or other patent and intellectual property rights; and (2)

breach of fiduciary duty. (Compl. ¶¶ 23–32, ECF No. 1.) Defendant argues, in its MTD, that Plaintiff lacks standing to bring the first claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and that, as to the second claim, Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See generally* MTD, ECF No. 11-1.)

**I. Rule 12(b)(1)**

***A. Standing to Seek Declaratory Judgment that Plaintiff is the Sole Owner of Patent Applications***

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).

Defendant makes a facial attack and argues that Plaintiff has failed to allege facts sufficient to establish that it has standing to seek a declaratory judgment as to the ownership of the '172 and '672 patent applications "because it admits in the Complaint that [Defendant] never assigned his rights as a co-inventor and co-owner of the ['172, '672, and '681 patent applications] to [Plaintiff]." (MTD 14, ECF No. 11-1.)

Defendant states that "'[i]t is well-established that the named inventor of a patent is the presumptive owner of that patent.'" (*Id.* (quoting *Israel Bio-Eng. Proj. v. Amgen, Inc.*, 2005 U.S. Dist. LEXIS 44534, at *16 (C.D. Cal. Dec. 21, 2005 (citing *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998))))).) Further, Defendant explains that when there is more than one inventor, "'each co-

inventor presumptively owns a pro rata undivided interest in the entire patent.'" (*Id.* (quoting *Israel Bio-Eng. Proj.*, 2005 U.S. Dist. LEXIS at * 16).) Inventors may transfer their ownership interests; however, such transfer must be in writing. (*Id.* (citing *Israel Bio-Eng. Proj.* 2005 U.S. Dist. LEXIS at * 16; 35 U.S.C. § 261).) Accordingly, Defendant argues, "'it is incumbent upon a plaintiff whose standing has been challenged to come forward with the requisite evidence necessary to establish than an assignment, in writing, of the Intellectual Property took place before the lawsuit was filed.'" (*Id.* (quoting *Dominion Assets LLC v. Masimo Corp.*, 2014 U.S. Dist. LEXIS 88285, at *11 (N.D. Cal. 2014) (internal citations omitted)).)

Defendant asserts that Plaintiff has admitted that Defendant never executed a document transferring Defendant's ownership interests in the '172 or '672 patent applications to Plaintiff. (*Id.*) Defendant contends that Plaintiff's "sole effort to argue that any such written assignment occurred is to misconstrue two agreements that [Defendant] *signed on behalf of* [Plaintiff] as acting President, *accepting* a purported assignment of the rights to the '172 patent application from CLRS." (*Id.* at 15.) These agreements reflected a conveyance of CLRS's rights in the '172 patent application to Plaintiff, not of Defendant's rights in the '172 patent application. (*Id.*) Defendant argues that these documents do not, as Plaintiff suggests, confirm Plaintiff's ownership of the '172 patent application. (*Id.*) CLRS could only assign what it owned "and Plaintiff has made no allegations to support any claim that CLRS owned [Defendant's] inventor rights in the technology at the time of these agreements." (*Id.*) Defendant further argues that Plaintiff is still, to this day, "pressing [Defendant] to execute so-called 'formal' assignment documents," and explains that "what Plaintiff dismisses as a 'formality' is in fact vital to its claim of 'sole ownership' of the [patent applications]." (*Id.* at 16.) Therefore, Defendant argues that Plaintiff is, at most, "entitled to co-ownership rights in the [patent applications] by virtue of it at some point receiving written assignments from [Defendant's] co-inventors Oberreiter and Enemaerke." (*Id.*) Defendant asserts that because Plaintiff does not own 100% of the

patent applications in question, it lacks standing to bring an action for a declaratory judgment. (*Id*.)

Plaintiff, in contrast, argues that, in regard to the first claim, it is seeking relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and that it is not bringing a patent infringement case, which would require it to own the patent in question to establish standing. (Resp. in Opp'n 5, 8 ECF No. 15.) Plaintiff explains that "[t]he Declaratory Judgment Act provides that '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" (*Id*. at 5 (quoting 28 U.S.C. § 2201).) Plaintiff goes on to state that "'[a] party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged "under all circumstances, show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."'" (*Id*. at 5 (quoting *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126–27 (2007)).) Plaintiff explains that a controversy exists between the parties as to who holds the ownership rights to the '172 and '672 patent applications. (*Id*. at 6–8.)

Further, Plaintiff argues that the cases referenced by Defendant, which state that a plaintiff must own a patent to have standing to bring a patent case, relate to patent infringement cases and, therefore, are inapposite. (*Id*. at 8.) This dispute revolves around the ownership of patent rights, not infringement, and is a precursor to any claim of infringement. (*Id*.) Morever, Plaintiff asserts, that there can be no allegation of infringement at this point because no patent has issued. (*Id*. at 9.)

The Court agrees with Plaintiff as to the issue of whether Plaintiff has standing to bring a declaratory judgment action regarding the ownership of the patent applications. Plaintiff has not brought a patent infringement case and, therefore, Defendant's reliance on cases which state that to have standing a plaintiff must own a

- 9 -

14cv1566

patent are unpersuasive. Furthermore, Defendant's argument is nonsensical as it precludes the Court from settling the issue of who owns what percentage of the '172 and '672 patent applications. Plaintiff is seeking a judgment from the Court that it owns 100% of the patent applications; however, according to Defendant, Plaintiff cannot bring such a claim unless it definitively owned 100% of the patent applications at the time Plaintiff brought this case. Plaintiff must be able to seek a judgment from the Court regarding the ownership of the patent applications so that, if the Court concludes that it owns the application, Plaintiff can proceed with whatever additional relief it seeks. Therefore, Defendant's countless arguments as to the ownership of the patent applications themselves are not relevant to the Court's consideration as to whether Plaintiff has standing to bring this declaratory judgment action, one of three discrete issues presently before the Court.

To bring a claim pursuant to the Declaratory Judgment Act, a plaintiff need only show that there is a substantial, immediate controversy between the parties that warrants a declaratory judgment by a court. *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir. 2007) (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126–27 (2007)). Here, Plaintiff has shown that the parties disagree over the ownership rights of the patent applications, and that such dispute warrants immediate attention. A declaratory judgment by the Court, which would resolve the ownership dispute, is necessary for Plaintiff and Defendant to effectively proceed with their business ventures. Plaintiff has met the constitutional standing requirements and has satisfied the Court that it has standing to bring a claim pursuant to the Declaratory Judgment Act. *See Lujan v. Defenders of Wildlife*, 504 U.S. at 560–61; 28 U.S.C. § 2201. The Court concludes that Plaintiff has standing to bring a declaratory judgment action seeking a judgment from the Court as to the ownership rights of the patent applications. Accordingly, the Court **DENIES** Defendant's MTD as to whether Plaintiff has standing to bring a claim for a declaratory judgment.

/ / /

***B. Jurisdiction to Hear Action to Correct Inventorship***

Defendant also argues that Plaintiffs attempt to claim ownership of Defendant's individual patent applications must fail because this Court lacks jurisdiction to hear such a claim. (MTD 16–17, ECF No. 11-1.) Defendant states that 35 U.S.C. § 116 provides that an incorrect patent application may be corrected to identify the appropriate inventors by the Director of the USPTO and that, therefore, this "authority lies exclusively with the USPTO." (*Id.* at 17.) Section 116 does not create authority for the federal courts to amend patent applications.[4] (*Id.*) Defendant argues that "[f]ederal courts that have considered the issue have thus determined that they have no jurisdiction to correct inventorship of pending patent applications." (*Id.*) In *Eli Lilly v. Aaradigm Corporation*, the Federal Circuit concluded that 35 U.S.C. § 116 "only grants the Director of the [USPTO] the authority to take certain actions and plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications." (*Id.* at 17–18 (citing *Eli Lilly v. Aaradigm*, 376 F.3d 1352, 1354 (Fed. Cir. 2004)).) Accordingly, Defendant argues that this Court lacks jurisdiction to consider Plaintiff's claim that seeks to correct the inventorship of Defendant's pending '282 patent application.

Plaintiff concedes that the Court does not have jurisdiction to correct the inventorship of the '282 patent application. (*See* Resp. in Opp'n 16, ECF No. 15.) Thus, and given the unequivocal nature of Defendant's argument, the Court finds that it lacks jurisdiction to consider Plaintiff's claim seeking to amend the inventorship of the '282 patent application. Accordingly, the Court **GRANTS** Defendant's MTD as to whether the Court has jurisdiction to hear an action to correct inventorship.

/ / /

/ / /

---

[4] Defendant explains that 35 U.S.C. § 256 confers authority on federal district courts to correct "non-joinder of an inventor, but this authority is limited to *issued patents* provided the non-joinder occurred without deceptive intent." (MTD 17, ECF No. 11-1 (citing 35 U.S.C. § 256).) In this case, no patents have issued so any authority conferred on the federal courts pursuant to section 256 is not relevant.

## II. Rule 12(b)(6)

### A. Breach of Fiduciary Duty

"To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." *Charnay v. Cobert*, 145 Cal.App.4th 170, 182 (2006) (citing *Benasra v. Mitchell Silberberg & Knupp LLP*, 123 Cal.App.4th 1179, 1183 (2004); *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101 (1991)). "'A "fiduciary relation" in law is ordinarily synonymous with a "confidential relation."'" *Rickel v. Schwinn Bicycle Co.*, 144 Cal.App.3d 648, 654 (1983) (quoting *Bacon v. Soule*, 19 Cal.App. 428, 434 (1912)). A fiduciary relationship is "'founded upon the trust and confidence reposed by one person in the integrity and fidelity of another, and likely precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed.'" *Id.* (quoting *Bacon*, 19 Cal.App. at 434). Inherent in this relationship "is the duty of undivided loyalty the fiduciary owes to its beneficiary." *Wolf v. Superior Court*, 107 Cal.App.4th 25, 30 (2003). Directors and majority shareholders of corporations are ordinarily bound by fiduciary duties. *See id*.

Defendant argues that Plaintiff has failed to establish the existence of a fiduciary relationship between Plaintiff and Defendant at the time Defendant allegedly breached his fiduciary duty by filing the '282 patent application, as he was no longer serving as acting President or initial director of Plaintiff. (MTD 20–21, ECF No. 11-1.) Therefore, Defendant contends that "[t]he only basis for any fiduciary relationship that could have existed at the time of the alleged breach here is . . . [Defendant's] relationship with [Plaintiff] as *former* acting President and initial director. But Plaintiff does not allege that [Defendant] ever signed any agreement containing a covenant not to compete with [Plaintiff] after being pushed out–nor would it matter if he had" because, in California, non-compete covenants are generally void. (*Id*. at 20 (citing *Raymond Edwards II v. Arthur Andersen LLP*, 44 Cal.4th 937, 945 (2008)).) Defendant further argues that he had no duty to disclose his intentions regarding the '282 patent

application because, similarly, he was no longer an officer, director, or employee of Plaintiff's. (*Id*. at 21.) Lastly, Defendant asserts that Plaintiff's claim that he "'misled Plaintiff into continuing to provide to Defendant confidential information relating to Plaintiff's pending '172 and '672 patent applications' . . . is ludicrous" because Plaintiff, as "an *applicant, inventor, and co-owner* of the '172 and '672 patent applications . . . is *entitled to receive* the 'confidential information' Plaintiff speaks of." (*Id*. (quoting Compl. ¶ 21, ECF No. 1).) Defendant argues that his "filing of a 'competing' patent application that concerns technology directly related to his specialization as an allergist cannot form the basis of a breach of fiduciary duty claim" because at the time he filed such application he was merely a former president and former initial director of Plaintiff. (*Id*. at 21–22.) Defendant "simply had no duty, fiduciary or otherwise, to not compete with [Plaintiff], or to disclose information to [Plaintiff] about his separate professional endeavors after he was pushed out of the Company." (*Id*. at 22.)

Plaintiff, in contrast, argues that it has sufficiently stated a claim for breach of fiduciary duty because Defendant "was and is a shareholder, and was an officer and director of Plaintiff." (Resp. in Opp'n 15, ECF No. 15.) Plaintiff states that Defendant "had a fiduciary duty to Plaintiff to have alerted Plaintiff regarding Defendant's claim of ownership [of the patent applications], rather than permitting Plaintiff to proceed and detrimentally rely on Defendant's silence." (*Id*.) Plaintiff also argues that Defendant had a fiduciary duty to confirm that his '282 patent application is owned by Plaintiff. (*Id*. at 16.)

Plaintiff has failed to show that a fiduciary relationship existed between Plaintiff and Defendant at the time Defendant filed the '282 patent application. When Defendant filed the '282 patent application he was no longer president nor initial director of Plaintiff. While there is no dispute that Defendant owed Plaintiff a fiduciary duty when he was acting president and initial director, Plaintiff has offered no evidence to support the proposition that this duty continued after Defendant ceased his

relationship with Plaintiff. Based on the allegations in the complaint, it seems that no fiduciary relationship existed between Plaintiff and Defendant at the time Defendant filed the '282 patent application and, therefore, there was no breach of fiduciary duty. *See Charnay v. Cobert*, 145 Cal.App.4th at 182; *see also In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 758 (Del. Ch. 2005) ("former directors owe no fiduciary duties" such that former director "could not breach a duty he no longer had").

To the extent that Plaintiff is also alleging that Defendant breached a fiduciary duty by failing to assert his ownership rights in the '172 and '672 patent applications while he was acting president or initial director of Plaintiff, such a claim does not appear in Plaintiff's complaint. (*See* Compl. ¶¶ 28–32, ECF No. 1.) Accordingly, the Court **GRANTS** Defendant's MTD as to Plaintiff's claim for breach of fiduciary duty and **DISMISSES WITHOUT PREJUDICE** this claim.

## CONCLUSION

In light of the forgoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss. Plaintiff may file an amended complaint, which encompasses all of its claims and arguments, within twenty-one (21) days of the date on which this Order is electronically docketed.

**IT IS SO ORDERED**.

DATED: August 17, 2015

Honorable Janis L. Sammartino
United States District Judge