UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLERGIA, INC., a California corporation,<br><br>          Plaintiff,<br><br>v.<br><br>DENIS BOUBOULIS, an individual; and DOES 1 THROUGH 5, inclusive,<br><br>          Defendants. | Case No.: 14-CV-1566 JLS (RBB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ADVANCEMENT OF LEGAL EXPENSES**<br><br>(ECF No. 59) |

   Presently before the Court is Defendant Denis Bouboulis' Motion for Advancement of Legal Expenses. ("Mot.," ECF No. 59.) Also before the Court is Plaintiff Allergia, Inc.'s Response in Opposition to, ("Opp'n," ECF No. 62), and Defendant's Reply in Support of, ("Reply," ECF No. 64), Defendant's Motion. Plaintiff also filed an untimely supplemental response in opposition. ("Supp. Opp'n," ECF No. 63.) The Court vacated the hearing on the Motion scheduled for August 25, 2016 pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 65.) After considering the parties' arguments and the law, the Court **DENIES** Defendant's Motion for Advancement of Legal Expenses.

///

///

# BACKGROUND

Beginning several years ago, Defendant worked with Plaintiff's predecessor-in-interest, CLRS Technology, Inc., to develop and invent medical devices and related methods for using phototherapeutics to alleviate the symptoms of allergic rhinitis. (Second Amended Complaint ("SAC") ¶ 9, ECF No. 53.) In exchange for these contributions, Defendant received 116,111 shares of CLRS common stock. (*Id.*)

On August 5, 2010, CLRS filed a provisional patent application with the United States Patent and Trademark Office (USPTO), Application Ser. No. 61/371,172 (the "'172 Application"), directed to an invention for alleviating the symptoms of allergic rhinitis. (*Id.* ¶ 10.) Defendant was one of three named inventors. (*Id.*)

Approximately two months later, CLRS spun out ownership of the '172 Application to Plaintiff in connection with a corporate transaction involving a third party, Solta. (*Id.* ¶ 11.) Accordingly, Plaintiff was incorporated on October 5, 2010 under the laws of California. (*Id.* ¶ 12.) All of the then-existing shareholders of CLRS—including Defendant—received shares of stock in Plaintiff based on their then-existing shares in CLRS. (*Id.*) Defendant was made Plaintiff's President. (*See id.* ¶ 16.)

CLRS then assigned all its rights in the '172 Application to Plaintiff. (*Id.* ¶ 13.) On October 12, 2010, Defendant signed the Assignment and Assumption Agreement (the "Assignment Agreement") on behalf of Plaintiff. (*Id.* ¶¶ 14–15.) The Assignment Agreement provided that "Assignor [CLRS] owns all of the assets set forth on <u>Exhibit A attached hereto (the "Distributed Assets")</u> . . . [,]" (*id.* ¶ 15(a) (emphasis in original)), which included the '172 Application, (*id.* ¶ 15(d)). Pursuant to the Assignment Agreement, CLRS and Plaintiff desired to effect "the sale, assignment, transfer, conveyance, distribution and delivery of all of Assignor's rights, title and interest in, to or under the Distributed Assets to Assignee [. . . Allergia]" and, "at the request of a party [to the Agreement] and without further consideration, the other party . . . shall execute and deliver . . . such other instruments of assignment . . . as such party may reasonably request to effect the distribution by [CLRS] of the Distributed Assets." (*Id.* at ¶¶ 15(b), (c)). On October 13,

2010, Defendant also signed the License Agreement on behalf of Plaintiff. (*Id.* at ¶¶ 16–17.) The License Agreement expressly represented that CLRS "hereby assigned to [Plaintiff] all right, title and interest in and to the ATD Patent Rights," which was defined as including the '172 Application. (*Id.* ¶¶ 17(a), (c).)

When signing the Assignment and License Agreements, "Defendant was fully aware of the contents of the documents . . . , and was fully aware of the purpose and intent of those documents." (*Id.* ¶ 18.) "Defendant gave no indication to Plaintiff . . . that Defendant believed that CLRS and then [Plaintiff] did not own all of the '172 [Application] and related rights, and/or that Defendant believed that he had not assigned his rights therein to CLRS and then/thereby to [Plaintiff]." (*Id.* ¶ 19.) Indeed, "for at least many months . . . , Defendant . . . did not tell or indicate to [Plaintiff] . . . that Defendant . . . believed that he personally retained any ownership in the '172 [Application] and related rights," but rather he "remained silent on the issue." (*Id.* ¶ 24.)

On October 15, 2010, the initial incorporator of Plaintiff formally named Defendant as an initial director of Plaintiff. (*Id.* ¶ 20.) On that same date, the CLRS/Solta transaction was executed. (*Id.* ¶ 21.) The resulting Agreement and Plan of Merger (the Executive Summary) and Disclosure Schedule expressly referenced the Assignment and License Agreements. (*Id.* ¶¶ 21–22.)

A few months later, Defendant requested a telephone conference with the owners and directors of Plaintiff, during which he disclosed an outline of a strategic business plan for Plaintiff. (*Id.* ¶ 27.) Defendant proposed that he would undertake execution of the proposed plan and assume the duties of CEO of Plaintiff if he were granted a controlling stake in the capital stock of Plaintiff. (*Id.*) In response, the shareholders and directors of Plaintiff requested that Defendant prepare and present a budget for his proposal. (*Id.* ¶ 28.) Several months passed without Defendant making the requested presentation. (*Id.*) Instead, Defendant "secretly prepared a related and apparently competitive patent application . . . without the knowledge and/or authorization of [Plaintiff] or its other shareholders." (*Id.* ¶ 29.) Defendant continued as President and director of Plaintiff until

approximately May 2011. (*Id.* ¶ 30.)

On August 4, 2011, Plaintiff filed a full utility application, Ser. No. 13/198,672 (the "'672 Application"). (*Id.* ¶ 34.) Although Plaintiff solicited Defendant's signature on related filings, Defendant refused to participate or assist in the prosecution of the '672 Application. (*Id.*)

On August 5, 2011, Defendant secretly filed Application Ser. No. US 13/204,282 (the '282 Application). (*Id.* ¶¶ 29, 35.) The '282 Application "is so closely related to [the '172 Application] that it may foreseeably interfere with or negatively affect [Plaintiff]'s business efforts related to [Plaintiff]'s patent-pending technology." (*Id.* ¶ 29.) Defendant filed a related Patent Cooperation Treaty patent application, Ser. No. PCT/US12/049108 (the "'108 Application"), on August 1, 2012, and a related European Union application, Ser. No. 2,739,354 (the "'354 Application"), on February 26, 2014. (*Id.* ¶ 36.) "Defendant's patent applications include description and claims that are similar or even virtually identical to the description and claims . . . in the Plaintiff's pending patent applications." (*Id.* ¶ 37.)

Plaintiff subsequently has "continued to make reasonable efforts to get Defendant to sign certain formal 'assignment' documents related to the '172 [Application]," but Defendant has refused. (*Id.* ¶ 39.) "[P]otential investors in Plaintiff's '172 patent-pending technologies and related opportunities have declined to invest based on Defendant[']s . . . actions, including positions taken and communicated to those investors by Defendant . . . regarding the parties' respective rights regarding Plaintiff's '172 patent-pending technologies and related opportunities." (*Id.* ¶ 40.)

On June 30, 2014, Plaintiff filed its initial complaint, asserting two causes of action: (1) declaratory judgment of patent application ownership and/or other patent and intellectual property rights, and (2) breach of fiduciary duty. (*See* ECF No. 1.) On August 17, 2015, the Court dismissed Plaintiff's first cause of action to the extent it attempted to correct ownership of the '282 Application and its second cause of action for breach of fiduciary duty. (*See* ECF No. 28.) Plaintiff filed its FAC on September 4, 2015 (*see* ECF

No. 30), and on May 19, 2016 the Court dismissed Plaintiff's causes of action for breach of contract and fraud. (*See* ECF No. 51.)

On June 3, 2016, Plaintiff filed its SAC, alleging causes of action for (1) declaratory judgment of patent application ownership and/or other patent and intellectual property rights; (2) breaches of fiduciary duty and/or implied contract; and (3) fraud.

Defendant now moves this Court for advancement of legal expenses because Defendant argues that Plaintiff sued him in his capacity as a former officer or director of Plaintiff, and thus he is entitled to an advancement of fees pursuant to California Corporations Code section 317 and Plaintiff's Bylaws. The indemnification provision of Plaintiff's Bylaws states:

> **Section 6.1.** *Right to Indemnification*. The Corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any person who was or is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "proceeding") by reason of the fact that he, or a person for whom he is the legal representative, is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or nonprofit entity, including service with respect to employee benefit plans, against all liability and loss suffered and expenses (including attorneys' fees) reasonably incurred by such person. The Corporation shall be required to indemnify a person in connection with a proceeding (or part thereof) initiated by such person only if the proceeding (or part thereof) was authorized by the Board of Directors of the Corporation.

(Mot. Ex. B ("Bylaws") 8,[1] ECF No. 59-4.)

///

///

---

[1] Pin citations refer to the CM/ECF numbers stamped electronically at the top of each page.

Plaintiff's Bylaws also provide an advancement provision, which states:

> **Section 6.2.** *Prepayment of Expenses*. The Corporation shall pay the expenses (including attorneys' fees) incurred by a director or officer in defending any proceeding in advance of its final disposition, provided, however, that, to the extent required by law, such payment of expenses incurred by a director or officer in advance of the final disposition of the proceeding shall be made only upon receipt of an undertaking by the director or officer to repay all amounts advanced if it should be ultimately determined that the director or officer is not entitled to be indemnified under this Article or otherwise.

(*Id.*) Section 6.3 of the Bylaws further explains what a claimant must do if he is not indemnified in full within sixty days of his written claim for indemnification. (*Id.*)

## LEGAL STANDARD

California Corporations Code section 317 provides mechanisms for permissive and mandatory indemnification by the corporation, as well as provisions for advancement of expenses. Of issue here is the indemnification provision of subsection (c), which provides that

> [a] corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was an agent of the corporation, against expenses actually and reasonably incurred by that person in connection with the defense or settlement of the action if the person acted in good faith, in a manner the person believed to be in the best interests of the corporation and its shareholders.

Cal. Corp. Code § 317(c).

Subsection (f) further allows a corporation to advance fees in such cases:

> [e]xpenses incurred in defending any proceeding may be advanced by the corporation prior to the final disposition of the proceeding upon receipt of an undertaking by or on behalf of the agent to repay that amount if it shall be determined ultimately

6

14-CV-1566 JLS (RBB)

that the agent is not entitled to be indemnified as authorized in this section. The provisions of subdivision (a) of Section 315 do not apply to advances made pursuant to this subdivision.

*Id.* at § 317(f).

## ANALYSIS

Defendant broadly argues that he is entitled to advancement of his fees based on section 317(f) and Plaintiff's Bylaws. (*See generally* Mot., ECF No. 59-1.) Plaintiff responds that (1) Defendant is not entitled to advancement because he does not meet the requirements of indemnification pursuant to section 317(c), on which Plaintiff believes the advancement provision of section 317(f) is necessarily based, (Opp'n 11–13, ECF No. 62); (2) advancement would be unfair given Defendant's "extensive delay and litigation tactics," (*id.* at 13–14); (3) public policy should not permit advancement in this instance, (*id.* at 14–16); (4) Defendant's status as an officer or director of the company is irrelevant to "Plaintiff's main claims," (*id.* at 7–11); and (5) in the alternative, Plaintiff should be allowed to amend its complaint "to withdraw its claim for any rights under Defendant's other 'secret' patent applications," (*id.* at 16–17). The Court considers each argument in turn.

**I. Relationship Between Sections 317(c) (Indemnification) and 317(f) (Advancement)**

Defendant argues that sections 317(c) and 317(f) are conceptually and procedurally separate provisions. (Mot. 13–16, ECF No. 59-1.) According to Defendant, section 317 indemnification is not available "until there has been either a determination of whether the corporate agent was acting in good faith or an adjudication on the merits." (*Id.*) On the other hand, Defendant argues that advancement is a summary proceeding "that occurs *before* any adjudication on the merits of the case against the corporate director or officer and before any determination of 'good faith.'" (*Id.* (emphasis in original).) "In other words, the right to advancement *does not depend on* whether the corporate agent is ultimately found to be entitled to indemnification." (*Id.* at 14 (emphasis in original).)

Plaintiff responds that, to the contrary, the advancement provision of section 317(f) necessarily depends on section 317(c), and thus Defendant is not entitled to any advancement because "there is no basis upon which he will ever be able to show that his relevant actions . . . met the requirements for indemnification under 317(c)." (Opp'n 13, ECF No. 62 (emphasis removed).)

Whether the advancement provision of section 317(f) is conceptually and procedurally separate from section 317(c) appears to be a matter of first impression in California. "When interpreting a statute, we look to the plain meaning of the statute's words, which are generally the most reliable indicator of the Legislature's intent." *Nicholas Labs., LLC v. Chen*, 199 Cal. App. 4th 1240, 1249 (2011) (citing *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 231 (2006)).

Here, a plain reading of the statute supports Defendant's view that the provisions are conceptually and procedurally separate. The indemnification provisions require either an ultimate determination that the agent was acting in good faith or an adjudication on the merits. Subject to a few exceptions, section 317(c) broadly allows a corporation to indemnify a corporate director or officer in any action "by reason of the fact" that they were an agent of the corporation and an ultimate showing that they "acted in good faith, in a manner the person believed to be in the best interests of the corporation and its shareholders." Cal. Corp. Code § 317(c). In addition, indemnification is mandatory under section 317(d) if "a corporate agent has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein," without regard to the officer's good faith. *Id.* § 317(d). Thus, indemnification under section 317 requires either a determination of the agent's good faith or an adjudication of success on the merits.

The advancement provision, in contrast, does not require any such determination. While certainly related to the indemnification provisions, section 317(f) provides that any such funds "may be advanced by the corporation *prior to the final disposition of the proceeding*." Cal. Corp. Code § 317(f) (emphasis added). Because advancement is

permissive (i.e., a corporation "may" advance these funds), all that is required to satisfy this subdivision is (1) corporate authorization for advancement (e.g., an advancement provision in the corporation's bylaws) and (2) "an undertaking by or on behalf of the agent to repay that amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section."[2] *Id.* Thus, whether or not the agent is ultimately indemnified pursuant to section 317(c) has no bearing on whether the corporation has authorized an advancement of those funds pursuant to subdivision (f).

The Court's view of the statute comports with other jurisdictions that have considered the same issue. *See, e.g.*, *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005)[3] ("An advancement action is a summary proceeding. The statutory authorization for

---

[2] The Ninth Circuit also appears to agree with this view. *Cf. Johnson v. Couturier*, 572 F.3d 1067, 1078 (9th Cir. 2009) (noting that under section 317(f) "California allows advancement of defense costs upon receipt of an undertaking," and finding that but-for preemption under ERISA, director-defendants, who were accused of corporate wrongdoing, "all submitted the requisite undertakings, thus apparently rendering advancement of their defense costs enforceable under state law").

[3] In the absence of guidance from California courts, the Court finds Delaware law on advancement particularly persuasive because of the depth of its experience with corporate governance issues. *See, e.g.*, *Int'l Airport Centers, L.L.C. v. Citrin*, 455 F.3d 749, 752 (7th Cir. 2006) (Posner, J.) ("What is true is that 'advancement' is rather a Delaware specialty . . . ."); Stephen A. Radin, *"Sinners Who Find Religion": Advancement of Litigation Expenses to Corporate Officials Accused of Wrongdoing*, 25 Rev. Litig. 251, 251–52 (2006) ("Recent decisions in Delaware–'the Mother Court of corporate law' and the state whose 'rich abundance of corporate law' guides courts throughout the country due to 'the special expertise and body of case law developed in the Delaware Chancery Court and the Delaware Supreme Court'–address an important but infrequently discussed corporate governance issue: charter, bylaw, and indemnification or employment agreement provisions that mandate advancement of attorneys' fees and other defense costs for corporate directors, officers, and employees accused of wrongdoing by the corporation or by federal or state law authorities." (citations omitted)). Indeed, several other states interpreting their own advancement and indemnification statutes have found Delaware law persuasive. *See, e.g.*, *Kramer v. Liberty Prop. Trust*, 408 Md. 1, 24–25 (2009) ("Due to [the similarity between both states' advancement statutes], and because the Delaware courts have gained a reputation for their expertise in matters of corporate law, we deem decisions of the Delaware Supreme Court and Court of Chancery to be highly persuasive as to our interpretation of what constitutes a 'proceeding' within the meaning of § 2-418 [Maryland's advancement statute]."); Radin, *supra*, at 271 ("To the limited extent that there is law [regarding advancement] outside Delaware, it is the same as the law in Delaware.").
  In addition, the Delaware corporate code provision providing for advancement is nearly the same as California's. *Compare* Cal. Corp. Code § 317(f), *with* Del. Corp. Code § 145(e); *cf. Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 586 n.5 (2001) ("The parties agree that we may properly

interim advancement of litigation expenses is distinct from the right to receive final indemnification under Section 145(a) and (b) of the DGCL."); *see also Miller v. Miller*, 132 Ohio St. 3d 424, 429 (2012) (holding that, as a matter of first impression, "[a]lthough advancement and indemnification are corollaries, they are not one and the same"); *Ficus Investments, Inc. v. Private Capital Mgmt., LLC*, 61 A.D.3d 1, 9, 872 N.Y.S.2d 93 (2009) (citing Delaware law as instructive and holding that indemnification and advancement are "independent of one another, in that 'an advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment'" (citation omitted)). Thus, the Court rejects Plaintiff's argument that Defendant's right to advancement depends on whether he will eventually be indemnified. *See Heine v. Bank of Oswego*, 144 F. Supp. 3d 1198, 1206 (D. Or. 2015) (citing Richard A. Rossman, Matthew J. Lund, and Kathy K. Lochmann, *A Primer of Advancement of Defense Costs: The Rights and Duties of Officers and Corporations*, 85 U. Det. Mercy L. Rev. 29, 53 (2007) ("Advancement generally refers to the right of a director or officer to receive an advance for expenses that he or she incurs in the legal proceeding before its final disposition. A director or officer's entitlement to an advancement of expenses is related to his or her entitlement to indemnification; however, the eligibility requirements for each are distinct."), *Holley v. Nipro Diagnostics, Inc.*, No. CA 9679-VCP, 2014 WL 7336411, at *10 (Del. Ch. Dec. 23, 2014) ("[I]ndemnification and advancement 'are separate and distinct legal actions' and . . . the 'right to advancement is not dependent on the right to indemnification.'" (citation omitted)). Accordingly, the Court holds that advancement under section 317(f) is separate and distinct from the indemnification subdivisions of section 317, and thus an agent is entitled to advancement under subdivision (f) if advancement is provided for by the corporation and the agent provides an undertaking to repay the advancement in the event he is not entitled to indemnification under section 317.

---

rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.").

## II. Whether Defendant Is Entitled to Advancement

The Court now turns to whether Defendant is entitled to advancement in this case. As just discussed, Defendant's claim for advancement depends on whether (a) Plaintiff provided Defendant with a right to advancement and (b) Defendant has provided an undertaking to repay the advancement in the event he is not entitled to indemnification. Because the Court concludes Defendant has no right to advancement, even though Plaintiff's Bylaws contain an advancement provision, the Court does not address whether Defendant has provided an undertaking to repay the advancement.

As noted above, Plaintiff's Bylaws expressly provide for indemnification and advancement.[4] As to indemnification, Section 6.1 states that the "Corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any person . . . by reason of the fact that he . . . is or was a director or officer of the Corporation . . . ." (Bylaws 8, ECF No. 59-4.) The advancement provision of Section 6.2 is mandatory and unconditional, providing that, subject to a few exceptions, the Corporation "shall pay the expenses (including attorneys' fees) incurred by a director or officer in defending any proceeding in advance of its final disposition . . . ." (*Id.*) The indemnification provision of the Bylaws, on which the advancement provision is based, provides for a scope of indemnification to the fullest extent of the law, which both parties agree triggers the requirements of section 317. (*See generally* Mot., ECF No. 59-1; Opp'n, ECF No. 62.) Both the indemnification and advancement provisions require the requesting party to be or have been a director or officer of the Corporation. Thus, whether Defendant is entitled to advancement of his fees depends in part on whether he was sued "by reason of the fact that" he was an agent, officer,

---

[4] "It is generally accepted that corporate bylaws are to be construed according to the general rules governing the construction of statutes and contracts. Bylaws must be given a reasonable construction and, when reasonably susceptible thereof, they should be given a construction which will sustain their validity . . . ." *Singh v. Singh*, 114 Cal. App. 4th 1264, 1294 (2004) (internal quotation marks omitted) (citing *Sanchez v. Grain Growers Ass'n*, 126 Cal. App. 3d 665, 672 (1981)).

or director of Plaintiff.[5]

In order to be indemnified under section 317, the action must have been brought against the party "by reason of the fact that the person is or was an agent of the corporation." Cal. Corp. Code § 317 (b), (c). Courts in other jurisdictions look to the allegations in the complaint when conducting the "by reason of the fact" advancement analysis. *See, e.g.*, *Holley v. Nipro Diagnostics, Inc.*, No. CA 9679-VCP, 2014 WL 7336411, at *8 (Del. Ch. Dec. 23, 2014) ("[T]he 'by reason of the fact' analysis requires looking to the allegations in the SEC's complaint."). While California law appears to be silent on how to apply the "by reason of fact" analysis in the advancement context, California courts have applied this standard to indemnification. Specifically, "by reason of the fact that the person is or was an agent of the corporation" would not apply, and thus indemnification is not warranted, "[w]here personal motives, not the corporate good, are predominant in a transaction giving rise to an action." *Plate v. Sun-Diamond Growers*, 225 Cal. App. 3d 1115, 1123 (1990). "'In other words, the conduct of the agent which gives rise to the claim against him must have been performed in connection with his corporate functions and not with respect to purely personal matters.'" *Id.* (citation omitted). "For example, '[i]t would . . . appear unlikely that an officer could properly claim that he was entitled to indemnification as the result of litigation brought to recover short-swing profits or profits from trading in the stock of his corporation on the basis of inside information . . . .'" *Id.* (citation omitted). Accordingly, the Court will apply this reasoning in the advancement context.[6]

---

[5] *See, e.g.*, Mot. 7, ECF No. 59-1 ("At this stage, and for purposes of this summary advancement proceeding, the Court need only assess whether [Plaintiff's] claims against [Defendant] were asserted against him in his capacity as a corporate agent."); *see also Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213–14 (Del. 2005) (finding that the advancement provision at issue was mandatory and unconditional and still holding a "narrow proceeding" to determine whether the party was sued in his official capacity).

[6] The Court notes that its conclusions might have varied if it applied Delaware law interpreting the "by reason of the fact" standard in the advancement context. In particular, Delaware law appears to be broader than California law addressing the standard in the indemnification context. Specifically, the Delaware Supreme Court explained that, in the advancement context, "if there is a nexus or causal connection

The California Court of Appeal's decision in *Plate v. Sun-Diamond Growers* is instructive in this case. In *Plate*, defendants Branson and McElroy were officers of Sun-Diamond Growers, an administrative and sales organization for roughly sixty thousand growers, who initially worked with H&R Plate & Company, Inc. ("Plate"), an industrial commodity food broker who was the exclusive broker for Sun-Diamond products in Northern California. *Id.* at 119. After some time, these defendants decided to leave Sun-Diamond and start their own brokerage business, eventually convincing Sun-Diamond to drop Plate and hire them instead. *Id.* at 1120–21. Plate brought suit against Sun-Diamond, McElroy, Branson, and others, and Sun-Diamond agreed to bear the cost of litigation, share its counsel, and indemnify them to the extent required by section 317 against liabilities arising from the litigation. *Id.* at 1121. In concluding that defendants Branson and McElroy were not sued "by reason of the fact" they were agents of Sun-Diamond for indemnification purposes, the court explained that

> [t]he record establishes these defendants were sued because of activity undertaken to establish their own business entirely independent of Sun-Diamond, for their own personal benefit, and not in furtherance of Sun-Diamond's policies or objectives. Such activity was unrelated to the performance of their corporate duties and responsibilities at Sun-Diamond. Indeed, Branson testified that they delayed informing Sun-Diamond of their plans because such plans would be viewed as creating a conflict of interest with their job performance at Sun-Diamond. Branson and McElroy thus were sued in their capacity as individuals pursuing their personal interests, and not by reason of the fact they were agents of Sun-Diamond. There simply is no evidence

---

between any of the underlying proceedings contemplated by section 145(e) and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005). Additionally, a causal connection exists if the official's corporate powers "were used or necessary for the commission of the alleged misconduct." *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007). While Defendant urges the Court to adopt these standards, (Mot. 20, ECF No. 59-1), and the Court finds Delaware law on advancement generally instructive for the reasons set forth above, *supra* note 3, here there is at least some guidance from California courts. Thus the Court declines to adopt Delaware law on this point and instead extends California indemnification law interpreting "by reason of the fact" to the advancement analysis.

>to support a finding that the first prerequisite to indemnification under section 317, subdivision (b), was met.

*Id.* at 1126.[7]

Applying the logic of *Plate*, the Court concludes that Defendant was not sued "by reason of the fact" that he was an agent and/or officer of Plaintiff. Specifically, all of Plaintiff's claims against Defendant appear to implicate actions that predominantly benefit Defendant, but do not appear to be in furtherance of the corporate good or performed in connection with Defendant's corporate functions. Plaintiff's claim for declaratory judgment of patent application ownership is not an action against Defendant, but an action to generally determine ownership of patent rights. (*See* SAC ¶¶ 45–48.); *see also Allergia, Inc. v. Bouboulis*, No. 14-CV-1566 JLS (RBB), 2015 WL 11735654, at *5 (S.D. Cal. Aug. 17, 2015) (Sammartino, J.) ("Here, Plaintiff has shown that the parties disagree over the ownership rights of the patent applications, and that such dispute warrants immediate attention. A declaratory judgment by the Court, which would resolve the ownership dispute, is necessary for Plaintiff and Defendant to effectively proceed with their business ventures."). Thus, this claim is not against Defendant at all, much less "by reason of the fact" that he was an officer or agent of the corporation. Accordingly, the Court concludes that this cause of action does not implicate the section 317 advancement analysis or any right to advancement under Plaintiff's Bylaws.

Furthermore, Plaintiff's claims against Defendant for breach of fiduciary duty and implied contract center on (1) Defendant's failure to inform Plaintiff that he believed he still owned some or all rights in the '172 and '672 patent applications, (SAC ¶¶ 50–51, ECF No. 53), and (2) Defendant's filing of allegedly secret and competing patent applications and similarly not disclosing the same, (*id.* ¶ 52). Plaintiff's assertions of fraud

---

[7] The *Plate* Court then discussed the second prerequisite to indemnification—whether the defendants acted in good faith—and thus that analysis is not subsumed by the court's discussion of "by reason of the fact." *See Plate*, 225 Cal. App. 3d at 1126.

against Defendant are based on these same allegations. (*Id.* ¶¶ 56–60.) The Court finds that these claims for relief largely—if not entirely—implicate Defendant's personal motives, not the corporate good. Specifically, Defendant's failure to inform Plaintiff that he believed he owned some or all rights in the patent applications served to benefit him (i.e., he might later assert, unbeknownst to Plaintiff, some claim for ownership rights in the eventual patents). Likewise, Defendant's alleged filing of secret and competitive patent applications demonstrates a motive to retain sole ownership in those applications. And the Court cannot discern how any of these alleged actions benefit Plaintiff in any way or were performed by Defendant in furtherance of his corporate functions.

To be sure, the fact that Defendant signed certain documents transferring ownership of the '172 patent application to Plaintiff likely could not have been accomplished without his role as interim President. And Defendant is accused of using his position as an officer to obtain confidential information that may have been used in filing his secret patent applications. Such allegations might entitle Defendant to advancement in Delaware—and other—courts. *Supra* note 6. But based on the standard set forth in *Plate*, the Court declines to conclude that the core of the allegations against Defendant—that he did not disclose his belief that he still owned some or all rights in the '172 and '672 patent applications, and that he secretly filed competing patent applications while working for Plaintiff—were in furtherance of his corporate functions or the corporate good. *Cf. Warner v. Sims Metal Mgmt.*, No. C 13-02190 WHA, 2013 WL 4777314, at *2 (N.D. Cal. Sept. 6, 2013) (in the indemnification context, finding that the plaintiff was not sued by reason of the fact he was an agent where "defendant allege[d] that plaintiff converted property and submitted fraudulent expense reimbursements, which are purely self-serving acts that do not further the corporate good"). Accordingly, the Court **DENIES** Defendant's Motion for Advancement of Legal Expenses.[8]

---

[8] As a result, the Court need not address Plaintiff's other arguments, such as public policy concerns or its request to amend its SAC.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Advancement of Legal Expenses. (ECF No. 59.)

**IT IS SO ORDERED.**

Dated: January 19, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge